# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jeffrey Evans, derivatively on behalf
of Navarre Corporation,

                Plaintiff,

v.

Eric H. Paulson, James G. Gilbertson,
Brian M.T. Burke,  Cary L. Deacon,
Keith A. Benson, Charles E. Cheney,
Timothy R. Gentz, Tom F. Weyl,
Dickinson G. Wiltz, James G. Sippl,
Michael L. Snow, and Alfred Teo,

                Defendants,

and

Navarre Corporation,

                Nominal Defendant.

Civil No. 05-1818 (PAM/JSM)


**MEMORANDUM AND ORDER**

_____

Joan M. Brewster, derivatively on behalf
of Navarre Corporation,

                Plaintiff,

v.

Eric H. Paulson, James G. Gilbertson,
Brian M.T. Burke,  Cary L. Deacon,
Keith A. Benson, Charles E. Cheney,
Timothy R. Gentz, Tom F. Weyl,
Dickinson G. Wiltz, James G. Sippl,
Michael L. Snow, and Alfred Teo,

                Defendants,

and

Civil No. 05-2044 (PAM/JSM)

Navarre Corporation,

                    Nominal Defendant.

_____

William Block, derivatively on behalf                Civil No. 05-2067 (PAM/JSM)
of Navarre Corporation,

                    Plaintiff,

v.

Eric H. Paulson, James G. Gilbertson,
Brian M.T. Burke,  Cary L. Deacon,
Keith A. Benson, Charles E. Cheney,
Timothy R. Gentz, Tom F. Weyl,
Dickinson G. Wiltz, James G. Sippl,
Michael L. Snow, and Alfred Teo,

                    Defendants,

and

Navarre Corporation,

                    Nominal Defendant.

_____

This matter is before the Court on Defendants' Motions to Dismiss Shareholder Derivative Cases Pursuant to the Recommendation of the Special Litigation Committee.  For the reasons that follow, the Court grants the Motions.

**BACKGROUND**

Plaintiffs are shareholders of Navarre Corporation ("Navarre") and bring these three cases as shareholder derivative actions against certain Navarre officers and directors.

Plaintiffs allege that Defendants used improper accounting to artificially inflate Navarre's financial results, which caused Navarre's stock price to be artificially inflated. In June 2005, Navarre restated several financial statements, and its stock price declined as a result. Plaintiffs subsequently brought claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, insider trading, and violations of the Sarbanes-Oxley Act.

In August 2005, the Navarre Board of Directors ("Board") met to consider appointing an independent Special Litigation Committee (SLC), as permitted by Minnesota Statute § 302A.241, to conduct a good faith investigation and determine whether the derivative actions were in Navarre's best interests. The Board ultimately appointed Richard Solum as the SLC, and the case was stayed to allow the SLC time to investigate the claims. During the five-month investigation, the SLC reviewed thousands of pages of corporate records, filings with the Securities and Exchange Commission, employment contracts, e-mails, press releases, analyst reports, and stock trading reports. In addition, the SLC interviewed nineteen people and hired accounting and legal experts. The SLC also sought information directly from Plaintiffs.

On January 19, 2006, the SLC recommended in a forty-page report ("Report"), with voluminous attachments, that the derivative cases be dismissed because they were not in the best interests of Navarre. The SLC determined there was no evidence of wrongdoing by Navarre's directors and officers. After the SLC issued its Report, plaintiffs in two other related shareholder derivative actions, Binns v. Cheney and Filip v. Cheney, voluntarily dismissed their cases without prejudice. Those plaintiffs stipulated that it was in Navarre's

best interest to cease the litigation.  Defendants now seek dismissal with prejudice in the remaining derivative cases.

**DISCUSSION**

If a company's shareholders believe that the board of directors has acted unlawfully, the shareholders may bring a derivative lawsuit to hold the directors accountable to the corporation.  Janssen v. Best & Flanagan, 662 N.W.2d 876, 882 (Minn. 2003).  The claims asserted in such an action belong to the company, not to the shareholders.  Id.  Due to the derivative nature of such cases, the company may appoint an independent SLC to consider the corporation's legal rights and remedies, including whether those rights and remedies should be pursued in litigation.  Minn. Stat. § 302A.241, subd. 1.  If the SLC determines that a derivative action is not in the company's best interests, the company may seek to dismiss the action.

> The key element is that the board delegates to a committee of disinterested persons the board's power to control the litigation. . . .  A mere advisory role of the special litigation committee fails to bestow a sufficient legitimacy to warrant deference to the committee's decision by the court. If the board properly delegates its authority to act to the special litigation committee, the court will extend deference to the committee's decision under the business judgment rule.

Janssen, 662 N.W.2d at 884 (citations omitted).  Deference under the business judgment rule depends on whether the committee "acted in good faith and was sufficiently independent from the board of directors to dispassionately review the derivative lawsuit."  Id. at 888 (citations omitted).

Thus, the initial issues for the Court are whether the SLC was independent from the Board and whether it conducted the investigation in good faith.  See  Black v. NuAire, Inc.,

426 N.W.2d 203, 211 (Minn. Ct. App. 1988).  If the answer to one of these questions is no, then the Court may examine the merits of the Report.  Id. at 209-10.   If the answer to both questions is yes, the Court must defer to the SLC's business judgment and dismiss the cases.  See Drilling v. Berman, 589 N.W.2d 503, 510-11 (Minn. Ct. App. 1999).

The parties have submitted matters outside the pleadings for the Court's consideration.  Accordingly, the Court converts the Motions to Dismiss to ones for summary judgment.  See Fed. R. Civ. P. 12(b).  Summary judgment provides the correct mechanism to review whether the SLC was independent and conducted its investigation in good faith.  See Skoglund v. Brady, 541 N.W.2d 17, 19 (Minn. Ct. App. 1995).   Thus, Defendants must show that there are no disputed issues of material fact and that they are entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The Court will view the evidence and reasonable inferences in the light most favorable to Plaintiffs.  See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

## A.    Independence

The primary factor in determining independence is whether the Board delegated its power to control the litigation to a disinterested party.  See Janssen, 662 N.W.2d at 884 (citation omitted).  There is no question that Mr. Solum was a disinterested person.  He had no prior relationship, business or social, with Navarre or any of its directors.  The Board gave the SLC absolute authority and discretion to investigate the claims in this case.  During the investigation, the SLC actually refused to provide information about witnesses, notes, and documents to the Board, evidencing that its independence continued throughout the investigation.  Moreover, the SLC has no interest in this litigation.  The experts used by the

SLC were also completely independent from the Board.

Despite this strong showing of independence, Plaintiffs offer a few arguments in opposition. Plaintiffs submit that the SLC did not act independently because it was comprised of only one person. This suggestion, without more, is antithetical to Minnesota law, which expressly permits an SLC to consist of one person. See Minn. Stat. § 302A.241, subd. 1. Plaintiffs next argue that Mr. Solum is a named defendant in an unrelated securities fraud action, Kopelowitz v. Fortun, which undermines his objectiveness in this case. This argument is specious. The Kopelowitz case is completely unrelated to the case at hand, which Plaintiffs concede. Plaintiffs have not shown that Mr. Solum was ever held liable for any wrongdoing. Indeed, the Kopelowitz case was not filed until December 14, 2005, long after Mr. Solum was appointed as the SLC and when his investigation was nearly complete. The only relationship between the instant cases and Kopelowitz is that the Kopelowitz plaintiffs' attorney, William Federman, once represented the plaintiffs in the Binns and Filip cases. However, that relationship is too remote to have affected the SLC's independence in this case. Finally, Plaintiffs allege that the SLC's legal expert works for a firm that had isolated dealings with some of the individual Defendants and Navarre. However, the expert himself had no conflicts, and any representation by others in the firm was completely unrelated to this action. The firm currently has no pending matters involving any Navarre Defendant. In sum, the Court finds that the SLC was completely independent from the Board.

**B.      Good Faith**

"'Good faith' means honesty in fact in the conduct of the act or transaction concerned." Minn. Stat. § 302A.011, subd. 13.  Important factors include "(1) the length and scope of the investigation, (2) the committee's use of independent counsel or experts, (3) the corporation's or the defendants' involvement, if any, in the investigation, and (4) the adequacy and reliability of the information supplied to the committee." Drilling, 589 N.W.2d at 509 (quoting Lewis v. Boyd, 838 S.W.2d 215, 224 (Tenn. Ct. App. 1992)).

Here, the length of the investigation was five months and resulted in a forty-page Report.  In comparison, the report in Drilling was only two-and-a-half pages.  Id.  The scope of the investigation in this case was comprehensive.  The SLC interviewed nineteen witnesses, reviewed extensive corporate records, and analyzed numerous statutes, regulations, and accounting standards.  The SLC engaged independent experts in the fields of law and accounting.  None of the Defendants participated in the investigation unless they were responding to requests for information or interviews.  The information supplied to the committee was adequate and reliable.  All of the relevant factors indicate that the investigation was conducted in good faith.

Plaintiffs' challenges to the nature of the investigation are nothing more than second-guessing and speculation.  For example, Plaintiffs acknowledge that the SLC interviewed nineteen people but nonetheless fault the SLC for not taking more notes at the interviews. The SLC's note-taking practice is irrelevant to whether it conducted an honest investigation. Likewise, Plaintiffs cry foul because some interviews lasted only an hour; however, the value of an interview is not measured by time.  Plaintiffs also fault the SLC for not interviewing

7

all of the Defendants, but an SLC need not interview every alleged wrongdoer, see Drilling, 589 N.W.2d at 510 (where the committee interviewed only three of the eight defendants). The SLC in this case did not interview Defendant Teo because he was not significantly involved in any of the acts underlying the claims in this case. Plaintiffs also find fault with the SLC's use of experts, but they have not identified any errors in the experts' application of legal or accounting principles. Plaintiffs next accuse Defendants of failing to provide requested information to the SLC. If true, this would show bad faith by Defendants, not the SLC. Finally, Plaintiffs attack the substance of the Report, but a substantive challenge is not appropriate in the good faith analysis. The Court finds that the SLC conducted its investigation in good faith.

## C.      Procedural Considerations

Plaintiffs' final challenge to the Motions is that Defendants brought the Motions prematurely. Specifically, Plaintiffs accuse Defendants of not producing certain documents, which supposedly prevented Plaintiffs from fully testing the nature of the SLC investigation. Plaintiffs do not list what documents they lack or explain how the documents would have aided them. Plaintiffs offer only speculation that additional documentation would have revealed something helpful. Additionally, the docket shows that all discovery disputes were resolved by December 2006, and Defendants provided all required documents by February 2007. The Court finds that Defendants' Motions were timely brought.

## CONCLUSION

The SLC acted in good faith and independently from the Board in investigating whether these derivative lawsuits are in Navarre's best interests. The Court therefore defers

to the SLC's business judgment.   Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss the Shareholder Derivative Cases Pursuant to the Recommendation of the SLC (Docket No. 84 in Civil No. 05-1818; Docket No. 77 in Civil No. 05-2044; and Docket No. 67 in Civil No. 05-2067) are **GRANTED**, and these cases are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>May 24, 2007</u>

<u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge